UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14-CV-00853-TBR

DARYL L. LAFERTY,                                                          Plaintiff,

v.

UNITED PARCEL SERVICE, INC.,                                      Defendant.

## MEMORANDUM OPINION

Daryl Laferty filed this disability-discrimination action in Jefferson County Circuit Court against his employer, United Parcel Service, Inc., alleging UPS failed to accommodate his disability as required by the Kentucky Civil Rights Act (KCRA), Ky. Rev. Stat. § 344.010, *et seq.*  UPS removed Laferty's action to this Court.  *See* 28 U.S.C. § 1441(a).  Now, UPS seeks summary judgment as to Laferty's failure-to-accommodate claim.  Because Laferty does not qualify as "disabled" under Ky. Rev. Stat. § 344.010(4), UPS's Motion for Summary Judgment, R. 18, is **GRANTED**.

## I.

### A.

Daryl Laferty has worked for United Parcel Service, Inc. since 1997, R. 18-4 at 9–10 (Laferty's Deposition), and has been a member of the International Brotherhood of Teamsters Local 89, which represents all production employees at UPS's Louisville, Kentucky facility, *see id.* at 15; R. 18-2 at 3, ¶ 7 (Capps' Affidavit).  Over the years, Laferty has held several jobs with UPS.  *See* R. 18-4 at 10–14.  From 2000 until 2013, Laferty worked as a full-time package car driver, *id.* at 10–11, delivering and retrieving packages to and from residential and business customers, R. 18-2 at 3, ¶ 11.  Because UPS package cars are commercial vehicles, employees (such as Laferty) are required to

maintain a current U.S. Department of Transportation certification to operate them off of UPS property.  *See* R. 18-4 at 50; R. 18-2 at 3, ¶ 12.

On December 8, 2011, Laferty informed UPS that he would be off work for three weeks because he was seeking treatment for migraine headaches.  *See* R. 18-4 at 34; R. 18-5 at 17 (Medical Records); R. 21-1 at 1, ¶ 2 (Laferty's Affidavit).  Laferty returned to work on January 3, 2012.  R. 18-4 at 34, 37, 41.  However, due to the medication proscribed for his headaches, Laferty was unable to drive a commercial vehicle under Department of Transportation regulations.  *See id.* at 41, 59–61; R. 21-1 at 1, ¶¶ 4–5.  Laferty never sought a medical waiver or exemption from the Department of Transportation, R. 18-4 at 61, and sometime between April and June 2012, lost his Department of Transportation certification due to nonrenewal before expiration, *compare id.* at 50, *with* R. 18-2 at 4, ¶ 16.

Because the position was temporarily available due to other absences, Laferty worked full-time as an adjustment clerk between January 2012 and August 2013.  *See* R. 18-4 at 38–39, 41, 59.  Throughout that period of time, Laferty's treating neurologist, Dr. Brian M. Plato, prescribed four alternative medications which would not disqualify Laferty from holding a Department of Transportation certification.  *See* R. 18-5 at 23.  However, none controlled his symptoms.  *See id.*  Accordingly, on August 20, 2013, Dr. Plato recommended Laferty "find another job title that does not require a [Department of Transportation] license."  *Id.*

In July and August 2013, UPS Business Manager Tim Capps twice "invited Laferty to apply for an accommodation to determine the existence of any disability, if one existed, and to engage in the interactive process."  R. 18-2 at 4, ¶ 18.  On both occasions,

however, Laferty refused to "apply for an accommodation, adamantly denying that he had any sort of disability." *Id.*; *see also* R. 18-4 at 126–27. Instead, Laferty requested to remain in the adjustment clerk position for an indeterminate period of time on a full-time basis. *See* R. 18-4 at 98–99, 126. Capps explained that Laferty could not remain in that position indefinitely, and offered him two options: either reinstate his Department of Transportation certification, or seek an accommodation through UPS's internal process. *See* R. 18-2 at 5, ¶ 20. Laferty refused both, so on August 19, 2013, Capps placed Laferty on medical leave pursuant to the terms of his collective-bargaining agreement. *Id.*; *see also* R. 18-2 at 6–20 (National Master United Parcel Service Agreement).

Three days later, Laferty filed a grievance under the collective-bargaining agreement challenging Capps' decision. *See* R. 18-4 at 106; R. 18-5 at 33 (Record of Grievance). By Laferty's estimation, the collective-bargaining agreement provided him the right to continue working as an adjustment clerk indefinitely until his Department of Transportation certification could be restored. *See* R. 18-4 at 107.[1] UPS took the position that the collective-bargaining agreement conferred no such entitlement. *See* R.

---

[1] In support of his position, Laferty relied on National Master United Parcel Service Agreement art. 20, § 4, which read:

> Except as provided for in Article 16, a driver who is judged medically unqualified to drive, but is considered physically fit and qualified to perform other inside jobs, will be afforded the opportunity to displace the least senior full-time or part-time inside employee at such work until he/she can return to his/her driving job unless otherwise provided for in the Supplements, Riders or Addenda. While performing the inside work, the driver will be paid the highest part-time rate as an employee with equivalent seniority or current area practice. If no full-time inside position is available, the Employer will meet with the Local Union to develop a full-time position, if possible out of available work.
>
> In addition to those already covered by this section, disqualified drivers who are actively pursuing a waiver or exemption with the DOT may work inside pursuant to this section if there is a reasonable expectation that his or her waiver/exemption will be granted.

R. 18-2 at 19 (National Master United Parcel Service Agreement).

3

18-2 at 3, ¶ 13.[2]  Ultimately, a panel composed of both UPS and Union representatives unanimously denied Laferty's grievance.  *See* R. 18-4 at 155; R. 18-2 at 5, ¶ 21.

Thereafter, in May 2014, Laferty contacted UPS and requested to apply for an accommodation.  *See* R. 18-3 at 3, ¶ 5 (Peyton's Affidavit); *see also id.* at 5 (Correspondence from UPS Human Resources to Laferty).  Between May and July, UPS Area Human Resources Manager Lucia Peyton worked with Laferty to find a position meeting his proffered criteria.  *See id.* at 3–4, ¶¶ 7–10; *id.* at 7–11 (Accommodation Checklist).  In July 2014, Laferty bid on, and was awarded, a full-time car washer/refueler position at the Louisville facility.  *See* R. 18-4 at 128; R. 18-3 at 4, ¶ 11.  Because Laferty indicated his satisfaction with that position, UPS discontinued the accommodation process.  *See* R. 18-4 at 129–30, 170; R. 18-3 at 4, ¶ 11.

**B.**

On November 10, 2014, Laferty filed this disability-discrimination action in Jefferson County Circuit Court, claiming UPS refused to accommodate his disability in violation of the Kentucky Civil Rights Act (KCRA), Ky. Rev. Stat. § 344.010 *et seq.  See* R. 1-1 at 2, ¶¶ 6–10 (Complaint).  Relying on this Court's diversity jurisdiction, UPS removed Laferty's action under 28 U.S.C. § 1441(a).  *See* R. 1 at 2, ¶ 7 (Notice of

---

[2] UPS maintained that National Master United Parcel Service Agreement art. 16, § 3.2, controlled:

> When an employee, in any job classification requiring driving, has lost his/her license under this Article he/she shall be afforded the opportunity to displace junior, one (1) full-time or two (2) part-time, inside employees, until he/she can return to his/her driving job, not to exceed one (1) year, unless provided for otherwise in the Supplements, Riders or Addenda.  The employee shall receive the appropriate rate of pay for the job performed based on his/her seniority.  Coverage for benefits shall continue for the length of the leave of absence or for the job duration, up to one (1) year.

*Id.* at 16.

Removal).   Now, UPS moves for summary judgment.   *See* R. 18 at 1 (Motion for Summary Judgment).

## II.

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).   The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial."  *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)).   "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the party moving for summary judgment, UPS must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of Laferty's claim.  Fed. R. Civ. P. 56(c); *see Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).   Assuming UPS satisfies its burden of production, Laferty "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial."  *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

## III.

Laferty brings his disability-discrimination claim under the Kentucky Civil Rights Act (KCRA), Ky. Rev. Stat. § 344.010 *et seq.*  Because the language of the KCRA mirrors (for the most part) that of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, courts interpret the KCRA consistent with the ADA.[3]  *See Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003); *Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007); *Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 526 (6th Cir. 2015).

The KCRA makes it unlawful for an employer to discriminate against an otherwise qualified individual on the basis of a disability.  Ky. Rev. Stat. § 344.040(1)(a); *accord* 42 U.S.C. § 12112(a).  A disability discrimination claim may be asserted under various legal theories, including disparate treatment and failure to accommodate, *see Webb v. Humana Inc.*, 819 F. Supp. 2d 641, 645 (W.D. Ky. 2011), and established through either direct or indirect evidence, *see Noel v. Elk Brand Mfg. Co.*, 53 S.W.3d 95, 100–01 (Ky. Ct. App. 2000); *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868–69

---

[3] The Kentucky Civil Rights Act (KCRA), Ky. Rev. Stat. § 344.010 *et seq.*, does part company with the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, in a few significant respects. In 2008, Congress adopted the ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325, 112 Stat. 3553 (effective January 1, 2009), which broadened the definition of "disability" under the ADA. Pursuant to Congress's instruction, the Equal Employment Opportunity Commission (EEOC) amended its corresponding regulations and interpretive guidance to implement the ADAAA in 2011. *See* Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act, as Amended, 76 Fed. Reg. 16,978 (March 25, 2011) (codified at 29 C.F.R. pt. 1630).

The Court's research has revealed no published Kentucky cases addressing how the ADAAA affects, if at all, claims for disability discrimination brought under the KCRA. Federal courts continue to interpret the KCRA consistent with pre-ADAAA jurisprudence. *See Breen v. Infiltrator Sys.*, 417 F. App'x 483, 486 (6th Cir. 2011); *Darby v. Gordon Food Servs., Inc.*, No. 3:11-CV-00646-DJH, 2015 WL 3622529, at *5 n.2 (W.D. Ky. June 8, 2015); *Dickerson v. City of Georgetown*, No. 5:14-CV-39-JHM, 2015 WL 2401190, at *3 n.2 (E.D. Ky. May 20, 2015); *Brown v. Humana Ins. Co.*, 942 F. Supp. 2d 723, 731 (W.D. Ky. 2013); *Azzam v. Baptist Healthcare Affiliates, Inc.*, 855 F. Supp. 2d 653, 658 n.2 (W.D. Ky. 2012); *Webb v. Humana Inc.*, 819 F. Supp. 2d 641, 645 n.3 (W.D. Ky. 2011).  Until such time as the Kentucky Supreme Court or General Assembly speaks on this issue, the Court will take that approach.

(6th Cir. 2007). Here, Laferty brings a failure-to-accommodate claim.[4] Such a claim necessarily involves "direct evidence (the failure to accommodate) of discrimination." *Kleiber*, 485 F.3d at 868. To make out the corresponding *prima facie* case, then, Laferty must show that he is disabled and otherwise qualified for the position despite his disability without accommodation from UPS, with an alleged "essential" job requirement eliminated, or with a proposed reasonable accommodation. *See Noel*, 53 S.W.3d at 101; *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 706 n.5 (Ky. Ct. App. 2004); *accord Kleiber*, 485 F.3d at 869.[5]

In this case, UPS maintains that Laferty's failure-to-accommodate claim cannot make it out of the gate. A person is "disabled" under the KCRA, UPS says, if he (1) suffers from a "physical or mental impairment that substantially limits one . . . or more of [his] major life activities," (2) has a "record of such an impairment," or (3) is "regarded as having such an impairment." Ky. Rev. Stat. § 344.010(4)(a)–(c). UPS argues that Laferty fits none of those categories. *See* R. 18-1 at 10–11 (Memorandum in Support); R. 22 at 4–5 (Reply). By contrast, Laferty claims to fit them all. *See* R. 21 at 5 (Response to Motion for Summary Judgment). The Court holds that Laferty does not qualify as "disabled" under the KCRA, so UPS is entitled to judgment as a matter of law.

---

[4] During his deposition, Laferty and his attorney expressly abandoned any disability discrimination claim based on disparate treatment. R. 18-4 at 123 (Laferty's Deposition). Laferty's concession notwithstanding, the Court has undertaken the requisite review of the record and applicable law, *see Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992), and finds summary judgment on this claim to be appropriate because Laferty has not identified any similarly-situated, non-disabled employee whom UPS treated more favorably, *see Webb*, 819 F. Supp. 2d at 648.

[5] Assuming Laferty makes out his *prima facie* case, the burden shifts to UPS to establish that "a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon [it]." *Noel v. Elk Brand Mfg. Co.*, 53 S.W.3d 95, 101 (Ky. Ct. App. 2000) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012) (en banc)); *accord Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007).

**A.**

First, Laferty maintains that he suffers from an actual disability as defined by Ky. Rev. Stat. § 344.010(4)(a).  To satisfy that definition, Laferty must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show how the impairment substantially limits one or more of those activities.  *See Howard Baer, Inc.*, 127 S.W.3d at 592; *Azzam v. Baptist Healthcare Affiliates, Inc.*, 855 F. Supp. 2d 653, 658–59 (W.D. Ky. 2012).  It appears uncontested that Laferty has the requisite impairment: his migraine headaches.  *See Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 831 (10th Cir. 2011) (describing migraine headaches as a qualifying impairment under the ADA).  Laferty has identified driving and working as the major life activities affected, R. 21 at 5, and there is no suggestion either falls outside that definition, *see Howard Baer, Inc.*, 127 S.W.3d at 592 (describing working as a major life activity); *Finley v. Lake Cumberland Cmty. Action Agency, Inc.*, No. 1:06-CV-00171-R, 2008 WL 237856, at *4 (W.D. Ky. Jan. 28, 2008) (describing driving a personal vehicle as a major life activity).  UPS contends, however, that Laferty is not substantially limited in performing either major life activity.  *See* R. 18-1 at 10–11; R. 22 at 4–6.  On that point, UPS is correct.

Laferty has offered no evidence to substantiate the claim that his migraine headaches "restricted him in the major life activity of driving." R. 21 at 5.  While Laferty may be unable "to drive a commercial vehicle" under Department of Transportation regulations, R. 21-1 at 1, ¶ 5, it is undisputed that he is able to drive his personal vehicle "every day," R. 18-4 at 114.  Accordingly, Laferty's impairment does not substantially restrict him in the major life activity of driving.

8

Moreover, Laferty's migraine headaches do not substantially limit him in the major life activity of working either.  To be substantially limited in the major life activity of working, Laferty must "show that his impairment significantly restricts his ability to perform either a class of jobs or a broad range of jobs, not just his current or a single job." *Hallahan*, 138 S.W.3d at 709 (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491–92 (1999), *superseded by statute on other grounds*, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (effective January 1, 2009)).[6]  Courts "look to the number and types of jobs utilizing similar training, knowledge, skills, and ability required to perform the work at issue, and the geographical area available to the employee" when making that determination.  *Id.* at 710 (citing 29 C.F.R. § 1630.2(*l*)(3)(ii)(A)–(B) (2003)). "The 'central inquiry must be whether [Laferty] is unable to perform the variety of tasks central to most people's daily lives, not whether [Laferty] is unable to perform the tasks associated with [a] particular job.'" *Howard Baer, Inc.*, 127 S.W.3d at 593 (third

---

[6] In *Sutton*, the Supreme Court looked to 29 C.F.R. § 1630.2(j)(3)(i) (1998), which defined the term "substantially limits" when referring to the major life activity of working as

> "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999) (quoting 29 C.F.R. § 1630.2(j)(3)(i) (1998)), *superseded by statute on other grounds*, ADA Amendments Act of 2008.  The EEOC eliminated the language relied upon in *Sutton* from its post-ADAAA regulations.

However, the EEOC explained that it eliminated § 1630.2(j)(3)(i) because "no other major life activity receives special attention in the regulation, and with the fact that, in light of the expanded definition of disability established by the [ADAAA], this major life activity will be used only in very targeted situations."  Appendix to Part 1630—Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. pt. 1630, app. at 391 (2013).  Accordingly, even under the broader provisions of the ADAAA, a disability claimant identifying "working" as the major life activity impaired must still "show that [his] impairment substantially limits [his] ability to perform a class of jobs or a broad range of jobs in various classes as compared to most people having comparable training, skills, and abilities."  *Azzam*, 855 F. Supp. 2d at 660; *accord Carothers v. Cty. of Cook*, 808 F.3d 1140, 1147–48 (7th Cir. 2015); *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 834–35 (10th Cir. 2011); *Culotta v. Sodexo Remote Sites P'ship*, 864 F. Supp. 2d 466, 475–76 (E.D. La. 2012).

alteration in original) (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 200–01 (2002), *superseded by statute*, ADA Amendments Act of 2008).

Here, there is a dearth of evidence suggesting that Laferty's impairment substantially restricted his ability to perform either a class or broad range of jobs. Laferty is unable "to drive a commercial vehicle," R. 21-1 at 1, ¶ 5, and so does not qualify to be a package car driver for UPS, R. 18-2 at 3, ¶ 12. He offers no evidence, however, to demonstrate how that significantly restricts his ability to perform a wide range of other jobs as compared to similarly-situated persons with comparable training, skills, and abilities. Laferty is not prevented from driving noncommercial vehicles, *see* R. 18-4 at 114, from driving commercial vehicles on private property, *see id.* at 162, or from performing any other work-related activity, *see id.* at 127. As Laferty stated during his deposition: "I could work any job and I was doing any job, except I couldn't hold a DOT certification." *Id.* at 33; *see also id.* at 34. Consequently, Laferty is not substantially limited in the major life activity of working. The actual-disability prong is foreclosed to him as a matter of law.

## B.

Next, Laferty argues that he qualifies as "disabled" under Ky. Rev. Stat. § 344.010(4)(b) because he has a record of an impairment that substantially limits his major life activities of driving and working.[7] *See* R. 21 at 5. "A record of impairment means an individual has 'a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.'" *MX Grp., Inc. v.*

---

[7] The Court's research revealed no published Kentucky cases discussing the record-of-impairment prong of Ky. Rev. Stat. § 344.010(4)(b), and very few federal cases discussing the same in 42 U.S.C. § 12102(2)(B).

*City of Covington*, 293 F.3d 326, 339 (6th Cir. 2002) (quoting 28 C.F.R. § 35.104(3) (2001)).  To succeed under this prong, Laferty must show that he has "a record of 'an impairment that would substantially limit one or more of [his] major life activities.'"  *Id.* (quoting *Hilburn v. Murata Elecs. N.A., Inc.*, 181 F.3d 1220, 1229 (11th Cir. 1999)).  In other words, claims under Ky. Rev. Stat. § 344.010(4)(b) (based upon a record of impairment) would appear to succeed or fail for many of the same reasons under Ky. Rev. Stat. § 344.010(4)(a) (based upon actual impairment), "because both require a predicate showing of a mental or physical impairment that substantially limits one or more major life activities." *Edwards v. Ford Motor Co.*, 218 F. Supp. 2d 846, 851 (W.D. Ky. 2002) (citing *Hilburn*, 181 F.3d at 1229; *Colwell v. Suffolk Cty. Police Dep't*, 158 F.3d 635, 645 (2d Cir. 1998), *superseded by statute on other grounds*, ADA Amendments Act of 2008, *as recognized in Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x 85, 88 (2d Cir. 2010)).

Laferty has not raised a genuine dispute of material fact on this score.  The Court has already determined that Laferty has no actual-disability claim under Ky. Rev. Stat. § 344.010(4)(a) because his migraine headaches do not substantially limit the major life activities of driving or working.  *See supra* Part III.A.  For those same reasons, the record-of-disability prong is unavailing to him too.  *See Olds v. United Parcel Serv., Inc.*, 127 F. App'x 779, 782 (6th Cir. 2005); *DePrisco v. Delta Air Lines, Inc.*, 90 F. App'x 790, 794–95 (6th Cir. 2004).

## C.

Lastly, Laferty claims that, under Ky. Rev. Stat. § 344.010(4)(c), UPS regarded him as disabled.  *See* R. 21 at 5–7.  The regarded-as-disabled "provision 'is meant to

cover those [employees] who do not presently suffer from a substantially limiting impairment, but are regarded [by their employers] as having such an impairment'" nonetheless. *Edwards*, 218 F. Supp. 2d at 851 (quoting *MX Grp.*, 293 F.3d at 340). To proceed under the regarded-as-disabled prong, Laferty must show UPS either (1) mistakenly believed that he had an impairment that substantially limited one or more of his major life activities, or (2) mistakenly believed that an actual, non-limiting impairment substantially limited one or more of his major life activities. *Howard Baer, Inc.*, 127 S.W.3d at 594; *see also Hallahan*, 138 S.W.3d at 707–08. Put differently, Laferty must establish that UPS entertained misperceptions about him and his assumed (but nonexistent) or actual (but misunderstood) impairment. *See Edwards*, 218 F. Supp. 2d at 851–52. The Court's focus in a regarded-as-disabled claim, then, is not "upon the individual alleging discrimination, but instead is upon the state of mind of the employer." *Id.* at 852 (citing *MX Grp.*, 293 F.3d at 340).

In this case, Laferty has not carried his burden to show that UPS regarded him as disabled in the major life activity of driving. The evidence that Laferty points to shows only that UPS accurately perceived him "as not qualified to work" for it as a package car driver because he lacked the necessary Department of Transportation certification. *Howard Baer, Inc.*, 127 S.W.3d at 594. However, nothing in the record suggests how UPS perceived (or misperceived) his limitations in the major life activity of driving generally. "The mere fact that [UPS] had knowledge of [his] medical problems" is insufficient "to show that it regarded him as having a disabling impairment." *Hallahan*, 138 S.W.3d at 708 (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996); *Taylor*

*v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996); *Conant v. City of Hibbing*, 271 F.3d 782, 785 (8th Cir. 2001)).

Nor has Laferty demonstrated that UPS regarded him as being substantially limited in the major life activity of working. When working is the affected major life activity, the employee "must demonstrate not only that the employer thought that he was impaired in his ability to do the particular job, but also that the employer regarded him as substantially impaired in either a class of jobs or a broad range of jobs in various classes." *Id.* at 709 (collecting cases). There is no evidence, however, from which a jury could reasonably infer that UPS perceived Laferty as substantially impaired in either a class of jobs or a broad range of jobs. *See supra* Part III.A. Again, the record reveals that UPS regarded Laferty as unqualified to work for it as a package car driver. But he has not shown that UPS "misperceived him as having an impairment or limitation that would have disqualified him from any jobs other than" that of a package car driver. *Hallahan*, 138 S.W.3d at 711. Therefore, Laferty has not carried his burden of establishing that UPS regarded him as disabled either.

## IV.

Accordingly, the United Parcel Service, Inc.'s Motion for Summary Judgment, R. 18, is **GRANTED**. An appropriate order and judgment will issue separate from this Memorandum Opinion.

Date:

cc:      Counsel of Record